The Armed Services Board of Contract Appeals succinctly described the central issue in this case, the Type I Differing Site Condition case, as follows. We find that if a differing site condition was found, supporting piles would have to be redesigned accordingly. If, however, soil conditions were found to be consistent with the contract pouring, the original pile design, if designed in accordance with the Corps' Pile Design Manual, would suffice. So help me understand exactly what you're claiming here. Because I understand you're not claiming that the change in the pile design was a change under the contract, or that change entitles you to additional compensation, right? Well, actually, yes. I mean, the point is that the differing site condition resulted in a change to the design of the piles, which resulted in a change. I thought your claim was that it delayed the redesign of the piles, not that the redesign itself, if it had been done promptly, was itself a change. Am I mistaken about that? Well, the redesign resulted in additional costs, but you're correct that the primary cost that we're seeking is delay to the installation of the piles. You've never asked for compensation for the additional costs of the redesign, right? I believe that is a component in the claim that was submitted to the contracting officer. There's a CBC Engineer's Report in the Joint Appendix that says that the three-pile redesigns were due to differing soil conditions at the site and changes to the design criteria. In your reply brief, you only mentioned soil conditions and omit design criteria. What is there in the record that helps us disentangle those two different reasons for the redesign? Well, the CBC report you mentioned also refers to the difference in skin friction. It went down from, I believe, 227 to 126. That's certainly strong evidence that the soil conditions were such that a redesign was required. Additionally, as we point out strongly in the briefs, there were three subsequent pile designs, often that were rejected by the Corps. The reason the Corps rejected them was because they felt that the calculations submitted by My Client Optimum were not taking in the weakness of the soil. Where is that in the record? I understand that they rejected your calculations, but where does it say they rejected them due to a differing soil condition? Right. I don't think there is any reference. There is, Your Honor. There is a single piece of paper where they say that the reason for the change or the reason for the rejection of the pile calculation is the fact that Optimum's soils were for pile support. That's not the same thing as saying it's a differing site condition from the one specified, is it? I think it's obviously strong evidence, Your Honor. The point is Optimum submitted an original submittal back on September 9th before the differing site condition was found. That submittal was approved by the Corps. The problem is that you got a finding by the Board that there wasn't any different site condition. And I thought your primary argument was, well, okay, even if that's true, there was still the need to investigate whether there was a different site condition. Certainly. And that that caused a substantial delay because the government didn't do that promptly. I thought that was the essence of your claim. Am I mistaken about that? Well, that's part of the claim. There's actually two aspects to it. The first being that the Court erred. There are several errors. But the first error that we presented is that there was, in fact, a differing site condition. Why the Board rejected that, right? Well, agreed, but the Board's sole reason for rejecting that was the expert testimony. There's nothing else that the Board relies on. Why isn't that the condition? Because of all the evidence that we put into the record that countermands that. This Court has said... We don't sit here to make fact findings. I mean, if they had evidence to support a conclusion that there was no different site condition, you've got a very hard time overcoming that. Why didn't you call an expert? We didn't think we needed one, Your Honor. We had... They've got expert testimony. The Board accepts. Agreed. And we rebutted why that expert testimony really didn't help the Board. But the Board disagreed with you. And so we're on a substantial evidence review. And in order for us to find no substantial evidence, you have to knock out that expert opinion somehow. Right. And I believe we did do that in our briefing. Well, you didn't even argue on appeal that the expert opinion was, you know, inappropriate. I mean, you argued with the merit of the opinion, but you didn't say it should have been excluded, that he wasn't an expert sufficiently. Did you make a motion below to exclude it? Or did you just argue about the weight of his opinion? Well, the expert testimony was limited to the area of geotechnical information. So do you agree that the expert testimony was properly admitted then? I agree that the testimony was properly admitted with respect to the geotechnical information. However, the only thing the expert said was that the conditions, the condition of the contract as compared to the site conditions were not identical. He didn't say they were the same. He simply said they were not identical. He said they were close. He compared data from one boring CB10 and from the B1 boring, and then he says there's no DSC. Isn't that right? That's his expert conclusion. Well, we did object to the conclusion, the legal conclusion, that he could make a determination that there was no DSC. And an argument that we make in our briefing papers is that as a geologist... Sure, that's ultimately a conclusion for the court to make, whether it's a legal... Correct. It qualifies as a different site condition, but he can opine as to whether the physical conditions differ. He can, and he said that they were different. He said they were not the same.  Sure. They're opining that there was no different site condition is wrong, or is not supported by substantial evidence. Let's assume that there is no different site condition. You still intend, as I understand it, that the government was obligated to promptly investigate this problem, and its failure to do so caused you delay. Is there any other argument for a delay claim other than that one? Is there an argument about a delay in approving submissions? Or are we solely talking about the failure to promptly investigate whether a different site condition extended to the area of the pile? There is an... The investigation, as we've argued in our briefs... Bruce, help me. Yes. Answer my question. Okay. Are we solely talking about delay resulting from the government's failure to promptly investigate the extent of the different site condition? With respect to the delay claim, that's correct. But the investigation continues on through, I believe, the approval or the consideration of the submittals by Optimum. Because at that point, there's still... My client is submitting submittals based on its interpretation of the investigation. The board is... I'm a little confused. I know that the board found that there was concurrent delay that prevented you from being compensated for the submittal process. And it doesn't seem like you argued in your brief that that was wrong. You're not raising that submittal issue, are you? I see that I'm into my remodel. We'll keep going. Okay. The concurrent delay claim... No, just tell me about the submittal. You had a separate issue at the board that you should be compensated for the delay in the submittal process. Correct. You lost. Is that issue before us on appeals? Did you put it in your brief anywhere? Because I don't see it. No, we did not. And the reason for that is that... So, assuming the submittal, because you were talking about the submittals and going on to the submittals, I'd like to get back to this notion that the government's delay in investigating this alleged differing site condition compensates you its delay. I understand the confusion. Is that the argument you have? Assuming we disagree with you that there is a differing site condition, is that the only argument you're making now? There are two different submittals, if I can back up a little bit. The first submittal was the one that the court approved after the discovery of a differing site condition. And there's no dispute here that there was a differing site condition. Yes, there is. There was a differing site condition, but not in the pilot. Well, there's a dispute as to that in the record as well. But yes, there was muck discovered in the area. Then there was an investigation of how far that muck had stemmed. What you're contending, if I understand it, is that the failure to promptly investigate how far the muck extended caused the delay in the redesign and that is the source of your delaying claim, right? That's correct, Your Honor. And the investigation of the delay includes the period where Optimum submitted three different designs which were denied by the court because the calculations from the court's perspective did not take into account the decrease in the strength of the soil to uphold the pilot. And ultimately, as the court is aware, the timber piles called for by the contract were abandoned entirely. And steel helical piles were adopted. But that wasn't your proposal. Well, correct, but the court also proposed using concrete weights to weigh down the piles, something they wouldn't have done if the original timber piles of themselves were adequate. Okay, just one last question here. The government says the extent that you're claiming that there was a delay in promptly investigating the differing site condition, that you didn't raise that below. Are they correct about that? I don't believe so, Your Honor. And we've cited materials in our moving papers where we did, in fact, raise that below. I don't see that discussion in the board's decision and I didn't read your papers as saying that. Can you point to me somewhere in the board's decision where it specifically ruled on the delay in investigation claim? I don't believe the board did rule specifically on the delay in investigation claim. In our moving papers, we cited, the government was good enough to put in all of our briefs below, but we cited our initial claim to the contracting officer identifies this issue very specifically and quotes authority in support of this, including construction matters. It's at A779-80. Okay. And you'll see there's a quote from a construction treatise, which specifically indicates that you can recover for investigative delay. Okay. It's hard to read this really quickly, but if that's what you say it is, where did you raise this in your arguments to the board? Well, I believe it was raised in the complaint as well, and we cite that in our moving papers and in our post-hearing brief. The fact that the board didn't take that into account, I think, is... Where is it in your post-hearing brief? In our post-hearing brief at A1077-1085. Okay. I think we're out of time. We'll give you three minutes for rebuttal. Thank you, Your Honor. I would like, if I may, to find that cite for you with respect to the single piece of paper. I'll try to do it now, but if I don't, may I submit something? You can submit it. Thank you, Your Honor. Thank you, Your Honor. Mr. Wallach, is that what you're asking? Yes, it is. May it please the Court. So this seems to boil down to the question of whether the government promptly investigated the extent of the different cite condition and whether they raised that issue a lot. Brian? It could, but respectfully, no. This can be disposed of by the fact that what the Court was hinting at with the questions to the appellant about whether there is a factual finding that there was actually not any muck at the site of the weirs. Sure, sure. I mean, if we agree with that, you win on the different cite condition. But I think the point is, if we see that there's a separate delay claim, that the Court delayed in investigating whether there was a different cite condition, whether it ultimately ended up being one or not, they could still get compensated for the delay. Why isn't that a viable argument? We should send that back to the Board. That basis for that delay is still derivative of the different cite condition clause. And Section B of that clause conditions any compensation upon the conditions, if the conditions do materially so differ. I don't understand that, but I'm not sure that perhaps I'm not phrasing this properly. Isn't there a separate claim, a delay claim, not a different cite condition claim, if the government takes too long in investigating a different cite condition, even if it turns out not to be a different cite condition? I mean, for instance, somebody comes to you and says, we think there might be a different cite condition. The government says, okay, stop work. We're going to investigate it, and it takes two years to do it. They get money for that, don't they? Under those hypothetical facts, yes. If the work is stopped, it's the government's responsibility, absolutely. Well, isn't that their – I understand that it's a little fuzzy the way it's been presented, but it seems to me that their argument is essentially that you did delay investigating, and that caused them a delay in their project, which they should get compensated for. I agree that that is their argument. I do not – or the government does not agree that that is what the case – the facts in the litigation below bears out. Well, it's not whether the facts bear it out or not. It's because I think there's sufficient facts that could be made. First, I want to know from you whether you think they waived it or not, because it seems like in the claim they just put in for me, too, that that may have been waived, but I'm not sure that they preserved it at the Board. Yes, it is our position, and I think we put this in our brief, that this particular argument we believe that the contractor waived. But is that – is citation of the claim correct? Did you look at that? You said it's 779 and 80, and it looks like that's what they're talking about, although since there are two alleged different site conditions here, I'm not sure which this relates to. And when I looked at it, that was my conclusion as well. But then it raises it or it doesn't raise it? There is certainly an indication – I mean, they do cite the – there's a block quote of the treatise section about the government's obligation to investigate under the different site conditions clause. How well that raises the issue is not particularly clear to me, reading the claim. Going to the litigation before the Board, though, and I go right to the pages that Mr. Bacon cited, 1077 and 1085 in his briefing with the Board, those are factual recitations. That's not an argument at all about whether or not there was a delay occasioned by the government. Why didn't those troubles that Scott Timbers suggested, if you put the facts out there, that that will be sufficient to make a claim? Yes, to make a claim, I apologize. I was answering what I understood to be a question about whether in these proceedings OSI has waived this issue. Well, but the Scott Timbers case bears on the question of whether it's a waiver, because Scott Timbers suggested if you articulate the facts that support a legal theory, your failure to dot the i's and cross the t's and pull it by the right name is not going to preclude the claim, right? Yes, yes, that's what Scott Timbers said. But then going back to what facts we have here, not only do we have to talk about what evidence is in the record and what facts we would encourage this Court not to find, but what did happen? There was a stop-move order, right, immediately before the area that's dealt with in Mod P0004 about that defined area of muck. And then when Mod P004 was signed bilaterally and taken care of, that stop-work order for that particular area was lifted. There was no separate stop-work order for the area near the weirs. And the Board acknowledged that, found that finding in its decision. They don't appear to be challenging any of that in their appeal. So those are factual substantial error type issues that OSI has essentially competed. And so if we're going to assess whether or not the government investigation of a particular delay can be sort of re-litigated at this point, there are very insurmountable hurdles that OSI has to overcome. Well, that would be true if we had findings from the Board about this claim, but we don't. The Board seems to dismiss the concerns about the government's investigation of different site conditions claimed by saying, well, there was no different site conditions, so you're out of court. Yes, it does. It made a factual finding that there was actually no muck at the area where you're sitting. Paragraph 49. Yeah, but I think what we're suggesting to you is that that's not conclusive of a delay claim based on a theory that the government failed to promptly investigate. If you'll indulge me so I can back this up, at least the way I understand it. I understand the Court's question is good to invoke a different site condition clause. The government's obligation to investigate a noticed different site condition is in that clause. I think maybe the confusion is we're recognizing that they didn't explicitly invoke some kind of delay claim or suspension of work clause or the like, but the facts they presented suggest that because of the government's delay, they indeed were in some kind of suspension of work state or the like, and that the factual statements in their brief are sufficient to say that without formally labeling it that claim. Then I guess my response would be to look at the suspension of work clause and the analysis that typically goes into a normal delay claim. We have a precipitating event that allegedly is the government's responsibility, and I stress allegedly, and the body with original jurisdiction should be the one to engage in the factual investigation and fact-finding that might support whether or not, as opposed to seeming like OSI was in some sort of stopped work situation, even though there was no stopped work order at the Weir site, that it actually happened. But that suggests a remand to have the board address that question. It does, but then we get back to the issue of did OSI have an opportunity to litigate this? And they did. And then we come back to what we argued in our brief about the concurrent delay. As Mr. Gabin pointed out, all of this alleged delay due to a failure to investigate was at the same time in part predicated on OSI's understanding of the reason the government was rejecting its Weir and Piling submittals. If it's a concurrent delay, to a large extent it's based on notions that should have gone ahead with the design during the period of the different site commission's investigation. And I'm not sure that's a reasonable conclusion. Because if the site condition did extend to the area of the pilings, you would think that that would require something significant in the way of a redesign. So holding up the design while the investigation takes place seems to be a reasonable thing to do. Again, hypothetically, if I could, actually there's one thing that we didn't emphasize, or perhaps didn't really call out in our brief. Hypothetically, yes. Yes, hypothetically, yes. If all of those things happen. I want to sort of call out to the court a sort of causation issue with respect to their designs and this muck. As Mr. Gaikin pointed out, on September 9th was when they put in their original Weir design in 2009. The government turned that back to them on September 18th, 2009 with their comments. And you can find those at J572 and 574. The Weir, or I'm sorry, the muck in the non-Weir area, the one that was actually resolved through Mod 4, wasn't even noticed by OSI. Like, actually observing it or technically noticing the government until five days later on the 23rd. There's just no possible connection between the original design and this muck. Nobody even suspected that there was muck anywhere until after this design process began. Mr. Gaikin's argument in this area seems to be if there was no differing site condition, why do you accept the two-pile design is adequate for uplift and then reject the four-pile design? And yes, I agree. That's how I understand his argument. And it asks the court basically to conclude in OSI's favor based on assumptions. It does seem particularly odd that there was an original acceptance with some rejections, but for other reasons. And then, you know, after this different site condition on another place of this site was discovered, it went through subsequent designs. I agree. There's no reason in the record that I can find except your rejections based on calculations as to why those submittals were rejected. And in Garvey's position, yes, those were rejections based on calculations. I could walk the court through some of them, but I don't know that that would be a productive use of our time. What's the point, though? Why are helical anchors necessary if there's no differing site condition? Okay. I assume you're going to say because the original design was defective. It was through all of the particular instances. That's the acceptance of the first design with just the 50-foot. Here's, I think, an error by the court. Well, it was a conditional acceptance. It was coded C for a number of reasons, and one's beyond those that OSI's talked about in its briefer here. Is it possible that the court just didn't concentrate on the 50-foot thing because there were so many errors and there were other errors elsewhere that needed it to be? It certainly is possible. In fact, the first sort of C recoding that they indicated was for wind loading, that the design was not adequate for wind loading, i.e., the piles 25 foot up in the air in a hurricane zone might be pushed out of the way, not necessarily uplifted. I don't understand there to be a claim that the government's approval of the design and then later finding the design inadequate was a change or a violation of the contract. I don't receive that anywhere in the record of the history of litigation. I don't know. It's the government's view that this is a substantial evidence challenge. The court found that there was no actual muck at the site where the weirs were to be built. Yeah, but that doesn't seem to resolve the question on whether the investigation delayed and cost them money, which is an issue that wasn't addressed by the board. Why shouldn't we send it back and have the board address that delay? If you take a look at Mod P5, which is bilateral, that process... This is the mod where the government acknowledged OSI's concerns about the presence of potential muck. Reference the appendix page. I'm sorry. Appendix 693 through 694. The new scope of work is, as I think everybody agrees in the briefing, the contractor shall conduct a geotechnical investigation of the location where the weirs will be constructed The purpose of the investigation shall be to evaluate the effect of the deposit of peat and clay marl on the weir design and the design of the associated pylons. So you're saying... The parties agreed that... Under this law, they already got paid for that. Well, they got paid for the investigation. I don't think that that's particularly an issue. We're not arguing that there's an according satisfaction over everything. But what I'm saying in terms of assigning responsibility for any alleged delay with respect to an investigation, the parties agreed on... It appears November 18th at the latest, that OSI would be doing this investigation and sharing the results. Well, are you suggesting that this mod released the delay claim we're talking about? It's not what I intended. I was... No, that's not what I was intending to suggest. What I was intending to say is going back to my... Earlier I said... I said it earlier about the factual nature of delay claims. This is something that indicates, contrary to their allegations of the extended government delay, where there was an alleged period of not working on anything from OSI because of an investigation. Well, that sounds to me like a merits argument about why the government didn't cause delay, but the board didn't address that. The board didn't address that, correct. Isn't that indicative of the fact that the board didn't think that issue was properly raised to it? It's our position that yes. And again, looking at their actual papers before the board and the argument, we are unable to find any indication where that specific issue was raised by OSI, as opposed to their claim that they submitted the contract to us. Okay. Thank you very much. Thank you. Okay. Returning to Judge Hughes' question about where in the record the core statement about uplift capacities being not as adequate as what Optimum had included in its second set of submittals, it's actually in the board's opinion. In addendum 13, combining with fact 38, the core wrote, quote, uplift capacities will likely be much less than those currently calculated by OSI. Well, isn't that just talking about the fact that your calculations are wrong and that it's going to give different uplift capacities? It doesn't say anything about the soil conditions. Well, Optimum's uplift capacities dropped based on the findings of the core board. And now the core is coming back and saying, we don't agree. And again, the core approved the earlier submittal based on the original calculations of Optimum. Subject to certain conditions. Right. And Mr. Wolak mentioned the wind loading. And he also said the wind loading could, in certain circumstances, affect the uplift. I don't know about that. I don't know of anything in the record that supports that. But I will say this. There's nothing in the record where the wind loading is ever an issue again beyond that initial submittal. The only issue is uplift after that. There's no reference to wind loading. So they're not related to each other? I don't know of anything in the record that supports that idea. I'm not a geotechnical engineer, but not that I'm aware of, no. But you're not claiming that the redesign was a change in the contract? Ultimately, it changed from timber piles to steel helical piles. But that was all part of the investigation. Right. It's part of the delay claim. But you're not saying that requiring the change in the piles was a violation of the contract? That's correct, Your Honor. It was agreed to. I just want to clarify. I think this is what you told me before. But in your papers to the Board, the sole place you say you raised this delay claim, as opposed to different site conditions, is at pages 1077 to 1085 of your post-hearing brief. Well, it's in our papers. Well, this is the only thing you cited to me on your main. But let's assume that's correct. Those things are all labeled, OSI counters a different site condition. How do you think the Board has put on notice that you're raising a separate delay claim, as opposed to a different site condition claim, when all you do is a factual recitation under a different site condition claim, and you make no legal argument whatsoever about a separate delay claim? I don't necessarily agree that we made no legal argument. Can you point to me in your post-hearing brief? Because you haven't done that yet. Well, I would return to Judge Dyke's point in the Scott Timber issue, that it was certainly raised to the contracting officer. Yes, but you can raise things to a contracting officer and waive them by not raising them to the Board. So where did you raise it to the Board, if not in this factual section? Is it raised as a separate legal argument anywhere? The delay with respect to the investigation? I believe the facts that we presented support that legal argument. I don't think it's incumbent upon the Board to parse your factual recitation to determine any legal theory that might support a completely different delay claim. I don't think it's incumbent upon the Board, but I also don't think the Board can simply ignore the facts in this case, as your honors have correctly defined. Why did everything change if the results of the protracted investigation were not such that there was a different site condition claim? So you're not saying to us, I hope, other than the pages 1077 and C, to which you cited it, it's in there somewhere. Why don't you find it? No, not at all, Your Honor. You did make a delay claim. Correct. To the Board, right? Correct. What's missing, perhaps, is a connection between the delay claim and the failure to promptly investigate. You're saying the facts as to the failure to promptly investigate were there. That's correct, Your Honor. The Board's opinion does a real disservice. What's the delay claim about the submittals? You told me before that you had that re-raised on appeal. Well, not to the submittals that come after the discovery of the differing site conditions. We have raised that point in our papers. The initial submittal and the delay with respect to returning that, we have not raised. And the reason for that is those original approvals didn't matter because there was a different site condition. Those were never going to go forward. It was the subsequent submittals and the delay in approving those in the December time frame that mattered. Okay. Thank you, Mr. Yerken. Thank you, Your Honor. I thank both counsel. The case is submitted.